UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NEIBERGER, *et al.*,

        Plaintiffs,

v.

ISLAMIC REPUBLIC OF IRAN

        Defendant.

Civ. Action No. 16-2193 (EGS)
UNDER SEAL

## MEMORANDUM OPINION

On October 5, 2021, the Court referred this case to Magistrate Judge Faruqui for full case management up to and excluding trial, including, with respect to any dispositive motions, the preparation of a Report and Recommendation ("R. & R.") pursuant to Local Civil Rule 72.3. Plaintiffs' Motion for Default Judgment as to Liability and Damages ("Pls.' Mot.") was filed on September 14, 2021. *See* ECF No. 78

On September 8, 2022, Magistrate Judge Faruqui issued an R. & R. recommending that Plaintiffs' motion be granted in part and denied in part. *See* R. & R., ECF No. 86. One plaintiff—Jessica Farley ("Ms. Farley")—has submitted objections to the R. & R. *See* Pl. Jessica Farley's Objections to the Magistrate Judge's Proposed Findings and Recommendations ("Objections"), ECF No. 88.

The Court has carefully reviewed the portions of the Report and Recommendation for which no objections have been received.

1

Upon careful consideration of the R. & R., Ms. Farley's objections, the applicable law, and the entire record herein, the Court hereby **ADOPTS** the R. & R., and **GRANTS IN PART and DENIES IN PART** Plaintiffs' Motion for Default Judgment and Damages, *see* ECF No. 87.

I.   Background

The R. & R. provides the following background:

> From 2006 to 2009, a series of terrorist attacks in Iraq killed or severely injured U.S. military servicemembers and civilians. The following ten U.S. military servicemembers and civilians were victims in the attacks: Patrick Hanley, Samuel Montalbano, and Stephen Evans— who were injured in the attacks and are themselves plaintiffs in this case along with family members; Christopher Neiberger and Joshua Reeves—who died in the attacks and whose estates and family members are represented here; and Rod Richardson, Blake Stephens, Steven Davis, Steven Farley, and Raul Moncada—who died in the attacks and whose family members are plaintiffs. These attack victims, their estates, and their family members (collectively "Plaintiffs") bring this action seeking compensation for their economic and psychological injuries from the foreign sovereign defendant, the Islamic Republic of Iran, under the terrorism exception to the Foreign Sovereign Immunities Act ("FSIA"). *See* 28 U.S.C. § 1605A. Central to this case is the Plaintiffs' argument that each of the ten attacks was a consequence of Iran's proxy war against the United States in Iraq. After Defendant failed to appear, the Clerk of Court entered default. *See* Clerk's Entry of Default, ECF Nos. 21, 66. Plaintiffs then moved for default judgment as to liability and damages. *See* Mot. for Default J., ECF No. 77.

R. &. R., ECF No. 86 at 1-2.

### II. Legal Standard

#### A. Objections to a Magistrate Judge's Report and Recommendation

Pursuant to Federal Rule of Civil Procedure 72(b), a party may file specific written objections once a magistrate judge has entered a recommended disposition. Fed. R. Civ. P. 72(b)(1)-(2). A district court "may accept, reject or modify the recommended disposition." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1) ("A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."). A district court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). "If, however, the party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the [R. & R.] only for clear error." *Houlahan v. Brown*, 979 F. Supp. 2d 86, 88 (D.D.C. 2013) (citation omitted).

Objections must "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for objection." LCvR 72.3(b). "[O]bjections which merely rehash an argument presented to and considered by the magistrate judge are not 'properly objected to' and are therefore not entitled to de novo review." *Shurtleff v. EPA*, 991

3

F. Supp. 2d 1, 8 (D.D.C. 2013) (quoting *Morgan v. Astrue*, No. 08-2133, 2009 WL 3541001, at *3 (E.D. Pa. Oct. 30, 2009)).

Here, the Court reviews Ms. Farley's objections *de novo*.

**III. Ms. Farley Is Not Entitled to Solatium Damages**

The R. & R. recommends denying Mr. Farley's request for solatium damages on the following grounds:

> "The 'immediate family' requirement is strictly construed in FSIA cases; . . . only spouses, parents, siblings, and children are entitled to recover." *Roth*, 78 F. Supp. 3d at 400. The statute does not include nieces, nephews, aunts, uncles, non-adoptive stepparents, or non-adopted stepchildren. *See Heiser II*, 659 F. Supp. 2d at 28-29. "Courts must draw [this] line to avoid 'such an expansive and indefinite scope of liability.'" *Borochov v. Islamic Republic of Iran*, No. 19-cv-2855, 2022 WL 656168, at *17 (D.D.C. Mar. 4, 2022) (quoting *Davis v. Islamic Republic of Iran*, 882 F. Supp. 2d 7, 15 (D.D.C. 2012)). Plaintiff Jessica Farley is the daughter-in-law of the deceased Mr. Farley. There is no precedent to support treating a daughter-in-law as an immediate family member or evidence to suggest that such designation is warranted here. *See Heiser II*, 659 F. Supp. 2d at 28-29. Although Ms. Farley was close with her father-in-law, "[t]he mere existence of a 'close relationship' between a claimant who is a non-immediate family member and the victim . . . falls 'far short of what [an IIED claim] requires.'" *Valore*, 700 F. Supp. 2d at 79 *(*quoting *Bettis*, 315 F.3d at 337).

R. & R., ECF No. 86 at 31-32.

Ms. Farley requests that the Court reject Magistrate Judge Faruqui's recommendation on the grounds that precedent supports her entitlement to damages because she is the "functional

4

equivalent of an immediate family member of a deceased victim." Objections, ECF No. 89-1 at 5.

Family members of deceased or injured members of the U.S. armed forces and civilians may recover solatium damages pursuant to the FSIA. 28 U.S.C. § 1605A(c). A solatium claim under the FSIA "is indistinguishable" from an intentional infliction of emotional distress claim. *Est. of Hirshfeld v. Islamic Repub. of Iran*, 330 F. Supp. 3d 107, 140 (D.D.C. 2018)(citation omitted). The Restatement (Second) of Torts applies to these claims. *See, e.g.*, *Abedini v. Government of Islamic Republic of Iran*, 422 F. Supp. 3d 118, 133 (D.D.C. 2019). "The 'immediate family' requirement is strictly construed in FSIA cases; generally, only spouses, parents, siblings, and children are entitled to recover." *Roth*, 78 F. Supp. 3d at 400. However, "[i]n a few limited circumstances, some courts have allowed relatives who either resided in the same household with the victim or were legal guardians to recover . . . ." *Bettis v. Islamic Republic of Iran*, 315 F.3d 325, 337 (D.C. Cir. 2003). "In these cases, the parties in issue were members of the victim's household, and they were viewed as functional equivalents of immediate family members." *Id.* Accordingly, the Court considers whether Ms. Farley was a "member[] of the victim's household" such that she could be considered "the functional equivalent[] of [a] family member[]." *Id.*

5



It is clear that Ms. Farley and her father-in-law had a meaningful relationship and that his death was devastating for her. However, Ms. Farley has not demonstrated that the

relationship she had with her father-in-law amounted to her being a "functional equivalent" of an immediate family member.

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████

In determining whether or not an individual qualifies as the functional equivalent of an immediate family member,

> [t]he first factor is long-term residence or co-habitation in the decedent's household. This was a key, if not decisive, factor mentioned in virtually all of the FSIA terrorism cases that have discussed awarding solatium damages to nonfamily members. *Bettis*, 315 F.3d at 337 (referencing court decision which allowed relatives who "*resided in the same household*" with the victim to recover); *Heiser*, 659 F. Supp. 2d at 29 ("[T]hose rare cases in which the parties at issue had lived in the victim's immediate household ... may require a slight stretching of the immediate-family requirement...."); *Valore*, 700 F. Supp. 2d at 79 (same). This requirement serves as a useful proxy to distinguish between family relationships which are emotionally strong and those which approximate that of the "immediate family." Intermittent or sporadic cohabitation (such as that characterized by brief periods of help in times of particular need instead of a long-standing, semi-permanent arrangement) would not generally be sufficient to fulfill this requirement.

*In re Terrorist Attacks on Sept. 11, 2001*, No. 03-MDL-1570, 2016 WL 8711419, at *5 (S.D.N.Y. Oct. 14, 2016). Here, Ms. Farley has not demonstrated that she was a long-term resident of her

7

father-in-law's household. *See generally* Farley Dep., ECF No. 76-4.

> The second factor is whether, in addition to cohabitation, the non-immediate family member ever played a guardian or custodian-like role in the decedent's life (or, vice versa, whether the decedent played such a role in the life of the family member). While the *Bettis* court referred expressly to "legal guardians," 315 F.3d at 337, in the context of stepparent/stepchild relationships, the *Heiser* and *Valore* decisions did not view legal guardianship as dispositive, instead looking at whether the stepparent emotionally, financially, and socially treated their stepchild as equivalent to a biological child. *Heiser*, 659 F. Supp. 2d at 29; *Valore*, 700 F. Supp. 2d at 79. The Court will follow the *Heiser* and *Valore* decisions in considering whether the family members claiming to be "functional equivalents of parents" or "functional equivalent of children" on the facts of each case, rather than by treating their legal status as controlling. The Court considers the length of the alleged guardian- or custodian-like relationship and for the number of years the functional equivalent to a child was a minor living in the claimant's home to be important factors.

*In re Terrorist Attacks on Sept. 11, 2001*, 2016 WL 8711419, at *5. Here, Ms. Farley does not claim that her father-in-law played a guardian or custodian-like role in her life. *See generally* Farley Dep., ECF No. 76-4.

> The third factor in determining the "functional equivalence" of a non-immediate family member in the parent or child role is whether the biological family member in question was absent in the family life. For example, a stepmother would be less likely to

>be considered a "functional equivalent" of a (biological) parent if the decedent maintained close contact with and/or received support from his or her (biological) mother, even if they lived in the custody of their father and also received significant support from the stepmother. On the other hand, if the non-immediate family member was stepping in to play a "functionally equivalent" role because of the death or long-term absence of the biological family member, this would make a functional equivalence finding more likely.

*In re Terrorist Attacks on Sept. 11, 2001*, 2016 WL 8711419, at *6. Here, Ms. Farley does not claim that her biological father was absent from her life. *See generally* Farley Dep., ECF No. 76-4.

Ms. Farley points to *In re Terrorist Attacks,* but the relevant facts there are distinguishable. In that case, the Court concluded that a stepdaughter was the "functional equivalent of a daughter" because "[s]he lived with [the decedent] through virtually her entire childhood until his tragic death. He provided all the financial, emotional, and moral support that any loving father would provide his child, and assumed all of the responsibilities inherent in the relationship, despite the lack of formal family ties by blood or adoption." *In re Terrorist Attacks on Sept. 11, 2001*, 2016 WL 8711419, at *8. ██████████████████

████████████████████████████████████████████

████████████████████████████████

Furthermore, she does not allege that her father-in-law provided "financial, emotional, and moral support" to her during her childhood. *See generally* Farley Dep., ECF No. 76-4.

Ms. Farley points to *Valore*, but the facts there are also distinguishable. In *Valore*, the Court agreed that the stepfather of the victim, who either had or had not adopted the victim, was an immediate family member because: (1) the stepfather was treated as the victim's "natural father"; (2) the stepfather considered the victim to be his son and vice versa; (3) they hunted and fished together; (4) the victim "grew up with" the stepfather as though they constituted a natural family. *Valore*, 700 F. Supp. 2d at 79-80. The Court also agreed that the victim's half-brother (or stepbrother if he was stepbrother instead) was the functional equivalent of a brother because he was treated like a brother by the victim and they went swimming and fishing together. *Id*. at 80. Ms. Farley also points to *Heiser*, where the Court concluded that two non-adoptive stepfathers satisfied the immediate family test. There the non-adoptive fathers "'lived in the same household' as their stepsons while the stepsons were still minors and 'treated' them as their own sons 'in every respect.'" *Heiser*, 659 F. Supp 2d at 29. ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

10

███████████████████████████████████████

███████████████████████

For all these reasons, the Court concludes that Ms. Farley has not demonstrated that the relationship she had with her father-in-law amounted to her being a "functional equivalent" of an immediate family member.

## IV.  Conclusion

For the reasons explained above, the Court hereby **ADOPTS** the R. & R., and **GRANTS IN PART and DENIES IN PART** Plaintiffs' Motion for Default Judgment and Damages, see ECF No. 87. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:**   Emmet G. Sullivan
          United States District Judge
          September 26, 2022